ALEXANDER M. DUDELSON, ESQ. (AD4809)
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100
(718) 624-9552 Fax
adesq@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PHILIP ANDERSON,                                        16 Civ. 6619 (DLC)

                                  Plaintiff,

                                                        AMENDED
          -against-                                     COMPLAINT AND
                                                        JURY DEMAND

THE CITY OF NEW YORK, POLICE OFFICER
PETER MARTER, POLICE OFFICER SINAN
CAGIRICI and POLICE OFFICER TAMARA
PINKNEY,

                                  Defendants.
-----------------------------------------------------------------------X

     Plaintiff, PHILIP ANDERSON, by and through his attorney, ALEXANDER M.

DUDELSON, ESQ., states as follows:

                                INTRODUCTION

     1.     This is an action for the wrongful acts of defendants, THE CITY OF NEW

YORK, POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CAGIRICI and

POLICE OFFICER TAMARA PINKNEY, in violation of Plaintiff's rights secured by 42 U.S.C.

Section 1983 and the Constitution and laws of the United States.

     2.     Plaintiff, PHILIP ANDERSON, alleges that on or about November 3, 2013,

defendants committed wrongful and illegal acts against Plaintiff, including violating the

Plaintiff's right to unlawful search and seizure, falsely arresting Plaintiff, wrongly imprisoning

Plaintiff, maliciously prosecuting the Plaintiff, and negligence in the hiring and retaining of

-1-

incompetent and unfit officers, negligence in the training and instruction, and supervision of its officers, and violating Plaintiff's Constitutional and civil rights.

JURISDICTION

3.    This action is brought under 42 U.S.C section 1983 in conjunction with the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and the Constitutional, statutory and common laws of New York State.

4.    Jurisdiction is invoked herein pursuant to the aforementioned statutory and Constitutional provisions pursuant to 28 U.S.C. Section 1331 and 1343, this being an action seeking to redress for the violation of the Plaintiff's Constitutional and civil rights.

5.    Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) in that the incident arose in the Southern District of New York.

6.    Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

PARTIES

7.    At all times relevant hereto, Plaintiff, PHILIP ANDERSON, was and is a citizen of the United States and resident of Kings County, in the City and State of New York.

8.    At all times relevant hereto, Defendant THE CITY OF NEW YORK was and is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department, which employs the other named defendants.

9.    At all times relevant hereto, Defendant POLICE OFFICER PETER MARTER (Shield No.: 18790) was at all times relevant to this action an officer employed by the New York City Police Department, and acted under the color of state law.  Upon information and belief,

POLICE OFFICER PETER MARTER was assigned to the 10th Precinct Cabaret Unit of the New York City Police Department, at the time of the occurrences alleged in this complaint. He is being sued in both his individual and official capacities.

10.     At all times relevant hereto, Defendant POLICE OFFICER SINAN CAGIRICI (Shield No.: 18239) was at all times relevant to this action an officer employed by the New York City Police Department, and acted under the color of state law. Upon information and belief, POLICE OFFICER SINAN CAGIRICI was assigned to the 10th Precinct Cabaret Unit of the New York City Police Department, at the time of the occurrences alleged in this complaint. He is being sued in both his individual and official capacities.

11.     At all times relevant hereto, Defendant POLICE OFFICER TAMARA PINKNEY was at all times relevant to this action an officer employed by the New York City Police Department, and acted under the color of state law. Upon information and belief, POLICE OFFICER TAMARA PINKNEY was assigned to the 10th Precinct Cabaret Unit of the New York City Police Department, at the time of the occurrences alleged in this complaint. He is being sued in both his individual and official capacities.

12.     At all times relevant hereto and in all their actions described herein, the defendants were acting under the color of statutes, ordinances, regulations, policies, customs and usages of the New York City Police Department, and New York City, pursuant to their authority as employees, servants and agents of the New York City Police Department, within the scope of employment and incidental to their otherwise lawful duties and functions as agents, servants and employees.

13.    At all times relevant hereto, the CITY OF NEW YORK was responsible for the training of its police officers, and more particularly, POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY.

14.    At all times relevant hereto, the defendant CITY OF NEW YORK was negligent in the supervision, discipline, and retention of the agents, servants and employees of the New York City Police Department.

15.    At all times mentioned herein, the defendant CITY OF NEW YORK, knew of or should have known of the bias, bad judgment, abusive tendencies and other unlawful propensities of the officers involved in the violation of civil rights, unlawful searches, false arrest, false imprisonment, malicious prosecution.

16.    The conduct and injuries complained of herein ensued without any negligent or culpable conduct on the part of the Plaintiff.

FACTUAL BACKGROUND

17.    At all times relevant to this action, Plaintiff resided in Brooklyn, New York.

18.    At all times relevant to this action, Plaintiff was in the business of driving customers to and customers admission into high end night clubs in the city of New York.

19.    On November 3, 2013, at approximately 1:25 a.m., the Plaintiff met P.H. on the corner of 17th Street and 10th Avenue in County of New York.

20.    That P.H. advised the Plaintiff that he was having trouble gaining entry into a nightclub named 1Oak and that the bouncer at the door advised him to speak with Plaintiff.

21.    That Plaintiff advised P.H. that P.H. could gain admission into 1Oak for $200.00.

22.    That P.H. agreed to pay the Plaintiff $200.00 to obtain admission into 1Oak.

-4-

23.     Upon information and belief, on November 2, 2016 at 9:30 p.m., Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY began their tour at the 10th precinct.

24.     Upon information and belief, on November 2, 2013, POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY were assigned to an unmarked New York City Taxi cab and began to canvas the area of the 10th precinct at approximately 11:00 p.m.

25.     Upon information and belief, on November 2, 2016 at 9:30 p.m., Defendant POLICE OFFICER PETER MARTER began his tour at the 10th precinct.

26.     At all times relevant herein, POLICE OFFICER PETER MARTER was the Senior Officer of the Cabaret Unit of the 10th precinct.

27.     At all times relevant herein,  POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY were officers in the Cabaret Unit of the 10th precinct.

28.     Upon information and belief, on November 3, 2013, at 1:30 a.m., Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY were stationary at West 18th Street and 10th Avenue, in the County of New York, in the unmarked New York City Taxi cab.

29.     On November 3, 2013, at approximately 1:30 a.m., Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY observed P.H. standing by an ATM machine and Plaintiff standing by a bench.

30.     Upon information and belief, on November 3, 2013, at approximately 1:30 a.m., Defendant POLICE OFFICER PETER MARTER was at the 10th Precinct.

31.     On November 3, 2013, at approximately 1:30 a.m., Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY observed P.H. hand an amount of currency to the Plaintiff.

32.     That no other objects were exchanged by Plaintiff and P.H. other than the currency.

33.     That POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY did not see any objects being exchanged by Plaintiff and P.H. other than the currency.

34.     POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY got out of the unmarked New York City Taxi cab and approached Plaintiff and P.H.

35.     That POLICE OFFICER SINAN CAGIRICI stopped P.H. and conducted a search of his pockets.

36.     That POLICE OFFICER PETER MARTER was not at the scene of the incident at the time of the stop and search of P.H.

37.     Upon information and belief, POLICE OFFICER PETER MARTER was at the 10th precinct at the time of the search.

38.     That POLICE OFFICER SINAN CAGIRICI removed two ziplock bags from P.H.'s pocket, which contained a total of less than one-half a gram of cocaine.

39.     That POLICE OFFICER SINAN CAGIRICI then handcuffed the Plaintiff and patted down the Plaintiff for safety.

40.     Upon information and belief, POLICE OFFICER SINAN CAGIRICI advised the 10th precinct via radio that he has "a one stop" and requested that a Sergeant respond to the scene.

41.     Approximately five minutes after POLICE OFFICER SINAN CAGIRICI arrested Plaintiff and P.H., POLICE OFFICER PETER MARTER appeared at the scene by foot.

42.     At approximately 1:40 a.m., another officer of the New York Police Department transported the Plaintiff to the 10th Precinct in a marked police vehicle.

43.     That Defendants POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CADIRICI and POLICE OFFICER TAMARA PINKNEY agreed that POLICE OFFICER PETER MARTER would take credit for the arrest despite the fact that he was not present for the exchange of money nor the search of Plaintiff and P.H.

44.     Upon information and belief, Defendants POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CADIRICI and POLICE OFFICER TAMARA PINKNEY engaged in a scheme wherein Police Officers will exchange arrests to justify their arrests for promotions, precinct budget and overtime.

45.     That Defendant POLICE OFFICER SINAN CAGIRICI searched the Plaintiff at the 10th precinct and recovered $206.00.  No drugs or contraband was recovered from the Plaintiff's person.

46.     That Defendant POLICE OFFICER PETER MARTER administered a strip search and anal cavity search of the Plaintiff.  No drugs or contraband was recovered from the Plaintiff's person.

47.     That $160.00 was found on the person of P.H. at the 10th Precinct.

48.     The Plaintiff was then photographed and fingerprinted.

49.     After processing, the Plaintiff was relocated to Central Booking in New York, New York.

50.     That POLICE OFFICER PETER MARTER wrote up the NYPD arrest paperwork to incorrectly and scandalously state that he observed a drug sale and that he apprehended the Plaintiff and P.H. after they attempted to flee the scene.

51.     While Plaintiff was in the Defendants' custody, Defendant POLICE OFFICER PETER MARTER advised the Office of the New York County District Attorney's Office that:

a.      Defendant  POLICE OFFICER PETER MARTER was in an unmarked yellow cab;

b.      Defendant POLICE OFFICER PETER MARTER observed Plaintiff and P.H. talking;

c.      Defendant POLICE OFFICER PETER MARTER observed Plaintiff show P.H. something;

d.      P.H. pulled out money and Plaintiff gave P.H. two bags of cocaine;

e.      P.H. put the bags of cocaine in his coin pocket;

f.      Defendant POLICE OFFICER PETER MARTER and partner stopped Plaintiff and P.H.;

g.      Defendant POLICE OFFICER PETER MARTER recovered two bags of cocaine from P.H.'s coin pocket.

52.     Defendant POLICE OFFICER PETER MARTER never made any observations of Plaintiff and P.H., the allegations were false, and Defendant POLICE OFFICER PETER MARTER knew the statements to be false at the time that they were made.

53.     Defendant POLICE OFFICER PETER MARTER forwarded these false allegations to the New York County District Attorney's office in order to justify the arrest and to persuade the District Attorney to commence the Plaintiff's criminal prosecution.

54.     Defendant POLICE OFFICER PETER MARTER knew and understood that the District Attorney, in evaluating whether to commence a criminal prosecution against the Plaintiff, were relying on the truthfulness of his claims and statements, and assumed that all of these factual statements and claims were truthful in all respects.

55.     On November 3, 2013, the Plaintiff was arraigned on the criminal court complaint in New York County Criminal Court, Part AR3.

56.     The Plaintiff was released on his own recognizance at arraignment.

57.     At the New York County Grand Jury Presentation, Defendant PETER MARTER testified as follows:

Q.     Officer, directing your attention to November 3, 2013

Q.     What type of car were you driving?

A.     I was driving and undercover yellow taxicab.

Q.     And on that day at approximately that time did you ever make any arrests?

A.     Yes.

Q.     Who did you arrest?

A.     Philip Anderson.

        *               *               *

Q.     Briefly describe what led to these arrests?

A.     I observed a drug transaction.  Basically what had happened was, um, I observed Mr. Anderson speaking with P.H., um, they approached an ATM machine which is on the corner of 18th and 10th, West 18th Street and 10th Avenue.

-9-

Q.     And how far away from you were - - from that ATM were you as you
       were watching?

A.     About fifteen feet.  I was parked right there, you know, I was in a yellow
       cab they didn't recognize me.  Um, I observed Mr. P.H. withdraw money
       and had it over to Mr. Anderson.   Mr. Anderson looked around and
       handed P.H. something.   Mr. P.H. then took whatever it was that he
       handed him and stuffed it in his right jacket pocket.

58.     This testimony were false and Defendant POLICE OFFICER PETER MARTER
knew the statements to be false at the time that they were made.

59.     On February 10, 2014, based on Defendant POLICE OFFICER PETER
MARTER's false statements, the Grand Jury of Kings County voted to indict the Plaintiff of one
count of Criminal Sale of a Controlled Substance in the Third Degree in violation of New York
Penal Law § 220.39(1), a B Felony.

60.     The Plaintiff's indictment number in the Supreme Court of the State of New
York, County of New York was 743-2014

61.     A jury trial in People v. Anderson, Indictment No.: 743/2014, was held on May
14, 2014 and May 15, 2015 before Hon. Ruth Pickholz.

62.     The People of the State of New York did not call Defendant POLICE OFFICER
TAMARA PINKNEY nor P.H. as witnesses.

63.     That Defendant POLICE OFFICER PETER MARTER testified that he was on
tour with Defendant POLICE OFFICER SINAN CAGIRICI in an unmarked New York City
Taxi cab.

-10-

64. That Defendant POLICE OFFICER PETER MARTER testified that he did not see Defendant POLICE OFFICER TAMARA PINKNEY on the date of the arrest and that she was not present for the arrest of Plaintiff.

65. That Defendant POLICE OFFICER PETER MARTER's testimony at trial, regarding his observation of Plaintiff and P.H., was wholly inconsistent with his testimony before the Grand Jury.

66. That Defendant POLICE OFFICER SINAN CAGIRICI falsely testified that POLICE OFFICER TAMARA PINKNEY and himself appeared at the 10th precinct, switched vehicles, and began surveillance with Defendant POLICE OFFICER PETER MARTER on November 3, 2013 at 1:00 a.m.

67. That Defendant POLICE OFFICER SINAN CAGIRICI falsely testified that he went back to the precinct to switch into a vehicle operated by Defendant POLICE OFFICER PETER MARTER, because POLICE OFFICER PETER MARTER's partner was processing an earlier arrest at the 10th precinct.

68. That POLICE OFFICER PETER MARTER's memobook is devoid of any information regarding an earlier arrest or working with Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY.

69. That POLICE OFFICER SINAN CAGIRICI's memobook is devoid of an information regarding returning to the precinct and switching into a vehicle operated by POLICE OFFICER PETER MARTER.

70. On May 15, 2015, the Jury found Plaintiff not guilty.

71. Defendants POLICE OFFICER PETER MARTER and POLICE OFFICER SINAN CAGIRICI bought charges against Plaintiff and purposely misused his Police powers

and the courts to arrest, harass, intimidate, imprison and prosecute Plaintiff for criminal charges in an effort to immunize themselves for their unlawful, unconstitutional arrest of Plaintiff.

72.     To date, as a direct and proximate result of defendants actions, Plaintiff has suffered loss of his liberty, and continues to suffer emotional pain, shame, degradation, humiliation, indignity, stress, loss of personal security and liberty, serious mental anguish, psychological and emotional distress, and various other physical and psychological injuries.

73.     As a direct and proximate result of an unlawful search and seizure, the Plaintiff makes a claim under the Fourth Amendment for the unlawful search itself.

74.     As a result of the Defendants actions, Plaintiff was arrested and detained for a time amounting to a period lasting approximately one day for criminal charges without just cause.

75.     As a direct and proximate cause of defendant's actions, Plaintiff was deprived of his rights, privileges and immunities under the Fourth, Eighth and Fourteenth Amendments to United States Constitution and the laws of the State of New York.

76.     As a direct and proximate cause of defendant's actions, the Plaintiff was maliciously prosecuted.

77.     As a direct and proximate cause of defendant's actions, the Plaintiff incurred substantial legal fees in connection with his defense.

78.     Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to adequately discipline, train or otherwise direct Police Officers, including the defendant Police officers, with regard to the rights of residents, citizens, and visitors to the United States of America, thereby causing the defendant officers in this case to engage in unlawful conduct described above.

79.     Defendant CITY OF NEW YORK, as a matter or policy and practice, has with deliberate indifference failed to properly sanction or discipline Police Officers, specifically POLICE OFFICER PETER MARTER for violations of the constitutional rights of the person within its domain, thereby causing police, including defendants in this case, to engage in the unlawful conduct described above.

80.     Defendant CITY OF NEW YORK, in its policies and practices, has with deliberate indifference, failed to follow procedures for supervising  and removing, when appropriate, unstable, malicious, violent, abusive, dishonest and biased Police Officers from there duties.

FIRST CLAIM: VIOLATION OF CONSTITUTIONAL RIGHTS:
VIOLATION OF FOURTH AMENDMENT RIGHT AGAINST
UNREASONABLE SEARCH AND SEIZURES
(DEFENDANTS POLICE OFFICER PETER MARTER,
POLICE OFFICER SINAN CAGIRICI and  POLICE OFFICER TAMARA PINKNEY)

81.     Plaintiff, repeats and realleges the allegations contained in paragraphs 1-80 of this complaint, as though fully set forth therein.

82.     That Defendants POLICE OFFICER SINAN CAGIRICI and  POLICE OFFICER TAMARA PINKNEY observed P.H. hand currency to the Plaintiff.

83.     Based on the observation of currency being exchanged, with nothing more, Defendants lacked probable cause to make an inquiry.

84.     The Defendants lacked probable cause to interrogate the Plaintiff.

85.     The Defendants lacked probable cause to search the Plaintiff.

86.     That Defendants had no reasonable suspicion that Plaintiff was concealing weapons or other contraband, the particular characteristics of the Plaintiff, and/or the circumstances of the arrest.

87.     The actions of Defendants POLICE OFFICER PETER MARTER and

POLICE OFFICER SINAN CAGIRICI, acting under the color of state law, deprived Plaintiff of

his rights, privileges and immunities under the laws of the Constitution of the United States of

America and the State of New York, in particular, the rights to liberty, to be secure in his person

and property, to due process under the law, and the prohibition of unlawful searches and

seizures.

88.     By these actions, Defendant POLICE OFFICER PETER MARTER and

POLICE OFFICER SINAN CAGIRICI deprived Plaintiff of his rights secured by the Fourth

Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

SECOND CLAIM: DEPRIVATION OF LIBERTY BY FALSE ARREST
and FALSE IMPRISONMENT
(DEFENDANTS POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN
CAGIRICI and POLICE OFFICER TAMARA PINKNEY)

89.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-88 of this

complaint as though fully set forth therein.

90.     That Defendants POLICE OFFICER SINAN CAGIRICI and  POLICE OFFICER

TAMARA PINKNEY observed P.H. hand currency to the Plaintiff.

91.     The Defendants did not have probable cause to arrest the Plaintiff.

92.     The Defendants caused the Plaintiff to be restrained against his will.

93.     The actions of Defendants POLICE OFFICER PETER MARTER, POLICE

OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY, members of the

New York City Police Department, and acting under the color of state law, deprived Plaintiff of

his rights, privileges and immunities under the laws of the Constitution of the United States of

America, in particular, the rights to liberty, to be secure in his person and property, to due

-14-

process under the law, and the concomitant rights to be free from false arrest, false

imprisonment.

94.     By these actions, the individual defendant has deprived Plaintiff of his rights

secured by the Fourth and Fourteenth Amendments to the United States Constitution, in

violation of 42 U.S.C. Section 1983, for which defendant is individually liable.

95.     As a result of the foregoing, Plaintiff PHILIP ANDERSON was deprived of

liberty, sustained great emotional injuries, was subject to great humiliation, and was otherwise

harmed, damaged and injured.

THIRD CLAIM: VIOLATION OF CONSTITUTIONAL RIGHTS:
MALICIOUS PROSECUTION
(DEFENDANTS POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN
CAGIRICI and POLICE OFFICER TAMARA PINKNEY)

96.     Plaintiff, repeats and realleges the allegations contained in paragraphs 1-95 of this

complaint, as though fully set forth therein.

97.     That Defendants POLICE OFFICER PETER MARTER, POLICE OFFICER

SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY initiated a criminal

proceeding against the Plaintiff.

98.     That the criminal proceeding terminated in the Plaintiff's favor.

99.     That Defendants POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER

TAMARA PINKNEY lacked probable cause for commencement of the criminal proceeding.

100.    That Defendant POLICE OFFICER PETER MARTER committed fraud and

perjury when he testified before the Grand Jury.  Defendant POLICE OFFICER PETER

MARTER was not present for any of the events leading up to the arrest.

101.    That Defendants Defendant DETECTIVE CARL MCLAUGHLIN commenced the criminal proceeding against the Plaintiff with malice.

102.    As a result of the foregoing, the Plaintiff is entitled to damages.

## FOURTH CLAIM: FAILURE TO INTERVENE
### (DEFENDANT POLICE OFFICER TAMARA PINKNEY)

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-102 of this complaint as though fully set forth therein.

104.    Defendant POLICE OFFICER TAMARA PINKNEY was present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

105.    Accordingly, the Defendant POLICE OFFICER TAMARA PINKNEY, who failed to intervene, violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

106.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM: CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (DEFENDANTS POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY)

107.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-106 of this complaint as though fully set forth therein.

108.    Defendants DEFENDANTS POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CAGIRICI and POLICE OFFICER TAMARA PINKNEY, under the color, conspired with each other to undertake a course of conduct to injure, oppress, threaten, harass and intimidate Plaintiff, denying him free exercise and enjoyment of the rights and privileges

-16-

and equal protection of the law secured to him by the Constitution, including the rights to be free from excessive force.

109.    Defendants engage in a scheme known as wherein Defendant POLICE OFFICER PETER MARTER would take credit for an arrest for a purported incident that he never observed.

110.    Defendants POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CADIRICI and POLICE OFFICER TAMARA PINKNEY engaged in a scheme wherein Police Officers will exchange arrests to justify their arrests for promotions, precinct budget and overtime.

111.    Defendants POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CADIRICI and POLICE OFFICER TAMARA PINKNEY engaged in a scheme known as "Collars for Dollars," which provides police officers with incentives to make an arrest.

112.    POLICE OFFICER PETER MARTER, POLICE OFFICER SINAN CADIRICI and POLICE OFFICER TAMARA PINKNEY, under the color, conspired with each other to undertake a course of conduct to injure, oppress, threaten, harass and intimidate Plaintiff, denying him free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution, including the rights to be free from excessive force.

113.    The aforementioned defendants, under the color of law, conspired with each other to undertake a course of conduct to bear false witness and/or to bear false testimony and/or to produce false evidence in an effort, in violation of Plaintiff's constitutional rights including the right to due process, to have plaintiff wrongfully prosecuted and convicted of a crime that he did not commit.

FIFTH CLAIM: VIOLATION OF CONSTITUTIONAL RIGHTS

(Defendant CITY OF NEW YORK)

114.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-113 of this complaint as though fully set forth therein.

115.    The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers. The conduct of the defendant officers was the direct consequence of the policies and practices of the Defendant CITY OF NEW YORK.

116.    At all times relevant to this complaint Defendant CITY OF NEW YORK, acting through the NYPD, had in effect polices, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of damages and injuries complained of herein.

117.    On April 8, 2014, the NYPD internal Chief, Joseph Reznick, circulated a memorandum stating that too many of the then recent arrests were examples of "collars for dollars."

118.    The April 8, 2014, memorandum stated that with respect to many of the arrests analyzed: "the reasons for enforcement were nonsense." The memorandum further stated: "Don't test me. Most arrests lacked quality and the end result was the same (no intelligence).

119.    The CITY OF NEW YORK knew or should have known of the defendant officers' propensity to engage in misconduct of the type alleged herein.

120.    Additionally, the CITY OF NEW YORK knew or should have known, more specifically of Defendant POLICE OFFICER PETER MARTER's propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to November 3, 2013,

the CITY OF NEW YORK was aware of numerous claims of constitutional violations involving

Defendant POLICE OFFICER PETER MARTER.

121.    That Defendant POLICE OFFICER PETER MARTER has been a defendant in

several police misconduct cases including but not limited to: Morales v. City of New York, New

York Supreme Court, Bronx County, Index No.: 7337/2005; Pridgen v. City of New York, New

York Supreme Court, Bronx County, Index No.: 6671/2006; Williams v. City of New York,

New York Supreme Court, Bronx County, Index No.: 350215/2008; and Wakefield v. City of

New York, New York Supreme Court, Bronx County, Index No.: 305027/2011.

122.    As a result of the foregoing conscious policies, practices, customs and/or usages,

defendant CITY OF NEW YORK has permitted and allowed the employment and retention of

individual officers whose individual circumstances place the public or segments thereof at

substantial risk of being the victims of unlawful and/or unreasonable behavior. Such policies,

practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein

and otherwise a direct and proximate cause of the injuries to the plaintiff therein.

123.    The acts of defendant CITY OF NEW YORK as set forth above deprived

Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United

States; in particular the rights to be secure in his person and property, to due process under the

law, and the right to be free from unlawful seizure, false arrest and false imprisonment, and

malicious prosecution.

124.    The acts and conduct of defendant CITY OF NEW YORK deprived Plaintiff of

his rights, privileges and immunities under the laws and Constitution of the United States.

125.     By these actions, defendant CITY OF NEW YORK has deprived Plaintiff of rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

126.     As a result of the foregoing, Plaintiff sustained physical injuries, great emotional injuries, was subjected to extreme humiliation, and were otherwise harmed, damaged and injured.

PRAYER FOR RELIEF:

WHEREFORE, Plaintiff PHILIP ANDERSON requests the following relief jointly and severally as against all of the Defendants:

1.     Award compensatory damages in an amount to be determined at trial;

2.     Award punitive damages in an amount to be determined at trial;

3.     Disbursements, costs and attorney's fees; and

4.     For such other further relief that this court may deep just and proper under the circumstances.

Dated: Brooklyn, New York
       January 5, 2017

                             /s/ Alexander M. Dudelson
                             ALEXANDER M. DUDELSON, ESQ. (AD4809)
                             *Attorney for Plaintiff*
                             26 Court Street - Suite 2306
                             Brooklyn, New York 11242
                             (718) 855-5100

-20-

To:

**Via ECF:**
Shlomit Aroubas, Esq.
New York City Law Department
*Attorneys for Defendants*
100 Church Street - Room 3-235
New York, New York 10007
(212) 356-2655