```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
PHILIP ANDERSON,                         :     16cv6629(DLC)
                                         :
                Plaintiff,               :     OPINION & ORDER
                                         :
        -v-                              :
                                         :
THE CITY OF NEW YORK, POLICE OFFICER     :
PETER MARTER, POLICE OFFICER SINAN       :
CAGIRICI, and POLICE OFFICER TAMARA      :
PINKNEY,                                 :
                                         :
                Defendants.              :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the plaintiff:
Alexander M. Dudelson
26 Court Street, Suite 2306
Brooklyn, NY 11242

For the defendants:
Eviana Englert
New York City Law Department
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

Plaintiff Philip Anderson ("Anderson") brings this 42 U.S.C. § 1983 action against the City of New York ("City") and New York Police Department ("NYPD") officers Peter Marter ("Marter"), Sinan Cagirici ("Cagirici"), and Tamara Pinkney ("Pinkney"), asserting claims arising from his arrest on November 3, 2013. The defendants have moved to dismiss the

amended complaint ("FAC") under Rule 12(b)(6), Fed. R. Civ. P. For the following reasons, the motion is granted.

**BACKGROUND**

These facts are taken from the FAC. Anderson works in the business of getting customers admission into high-end nightclubs in New York City and driving them to these clubs. On November 3, 2013, at approximately 1:25 a.m., Anderson met P.H. on the corner of 17th Street and 10th Avenue and agreed to help P.H. get into the nightclub 1Oak for $200.

Defendants Cagirici and Pinkney, who were officers in the 10th precinct's Cabaret Unit, were working in an unmarked police vehicle that looked like a New York City Taxi cab. They observed P.H. at an ATM machine and then hand money to Anderson. Cagirici and Pinkney got out of the cab and approached Anderson and P.H.. Cagirici stopped P.H., searched his pockets, and removed two ziplock bags containing less than one-half a gram of cocaine. Cagirici then handcuffed Anderson and patted him down for safety.

Approximately five minutes after Cagirici arrested Anderson and P.H., defendant Marter appeared at the scene. According to the FAC, Marter, Cagirici, and Pinkney agreed that Marter would take credit for the arrests even though he had not made any of the observations that led to the arrests.

At approximately 1:40 a.m., another NYPD officer transported Anderson to the 10th precinct. Cagirici searched Anderson at the 10th precinct and recovered $206.00, but no drugs. Anderson was strip searched. Anderson was arraigned in New York County Criminal Court on the same day of his arrest and was released on his own recognizance.

Marter wrote up the arrest paperwork, stating that he observed a drug sale and that he apprehended Anderson and P.H. after they attempted to flee. Marter also told the New York County District Attorney's Office ("DA") that: he observed Anderson and P.H. talking, Anderson show P.H. something, P.H. pull out money, Anderson give P.H. two bags of cocaine, and P.H. put the bags of cocaine in his pocket. Marter explained that he and his partner stopped Anderson and P.H. and he recovered two bags of cocaine from P.H.'s pocket. Marter also testified in the grand jury that he had observed a drug transaction involving Anderson and P.H.. On February 10, 2014, the grand jury indicted Anderson on one count of criminal sale of a controlled substance in the third degree in violation of New York Penal Law ("NYPL") § 220.39(1).

A jury trial was held on May 14 and May 15, 2015. Defendant Cagirici testified that he and Marter were working together on the date of Anderson's arrest. Marter testified that he was in the "cab" with Cagirici. The prosecution did not

3

call Pinkney or P.H. as witnesses at trial.  The FAC asserts, without explanation, that Marter's trial testimony of his observations was "wholly inconsistent" with his grand jury testimony.  The jury returned a verdict of not guilty.

Anderson filed the instant action on August 23, 2016.  He filed the FAC on January 5, 2017, asserting claims under § 1983 for unreasonable search and seizure in violation of the Fourth Amendment, false arrest and imprisonment, malicious prosecution, failure to intervene, conspiracy to violate Anderson's civil rights, and municipal liability.

On February 14, 2017, the defendants filed a motion to dismiss the FAC under Rule 12(b)(6), Fed. R. Civ. P.  The motion became fully submitted on March 23, 2017.

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor.  Loginovskaya v. Batratchenko, 764 F.3d 266, 269–70 (2d Cir. 2014).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014).  A claim has facial plausibility when the factual content of the

4

complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

**I. Section 1983 Claim for Unlawful Stop**

Anderson alleges that he was stopped and interrogated in violation of his Fourth Amendment rights.[1] The Fourth Amendment to the United States Constitution protects the right to be secure "against unreasonable searches and seizures." U.S. Const. amend. IV.

Under the Fourth Amendment, an officer may conduct a "brief investigatory detention" -- commonly known as a Terry stop -- as long as the officer has "reasonable suspicion that the person to be detained is committing or has committed a criminal offense." United States v. Compton, 830 F.3d 55, 61 (2d Cir. 2016) (citation omitted). Reasonable suspicion requires more than an "inchoate suspicion or mere hunch." Dancy v. McGinley, 843 F.3d 93, 106 (2d Cir. 2016) (citation omitted). It requires

---

[1] Anderson also alleges that he was searched in violation of his rights under the Fourth Amendment. Anderson's claim that he was unreasonably searched is dependent on his false arrest claim, and he does not contend in opposition to this motion that it should be separately analyzed.

5

"specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing." Id. (citation omitted). The standard is "not high," and simply requires "facts sufficient to give rise to a reasonable suspicion that criminal activity may be afoot." Id. (citation omitted).

Courts consider the "totality of the circumstances supporting the investigatory stop" in assessing a reasonable suspicion determination, and "evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." Id. (citation omitted). A court's assessment is properly informed by "commonsense judgments and inferences about human behavior." Id. (citation omitted). "Conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." Id. at 107 (citation omitted). A valid Terry stop must be "justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place." Id. (citation omitted).

Reasonable suspicion supported Anderson's stop and interrogation. Anderson and P.H. were not stopped at random -- they were stopped on the basis of their suspicious behavior. At

6

approximately 1:30 in the morning, P.H. was observed at an ATM machine and then handing money to Anderson.  Given the time, location, and circumstances, officers in the Cabaret Unit had reasonable suspicion as a matter of law to believe that a drug deal or other illegal activity was underway.

Anderson argues that the mere observation of P.H. handing Anderson money cannot give rise to a reasonable suspicion of criminal activity.  This argument fails.  Although P.H.'s hand-to-hand transfer of money may have reflected innocent activity, it was also consistent with a drug deal.  Considering the circumstances of the hand-to-hand transfer, reasonable suspicion supported the investigatory Terry stop.  Anderson's Fourth Amendment claim as it relates to his stop and search is dismissed.

**II. False Arrest and Imprisonment**

A false arrest claim under either federal or New York law requires a plaintiff to prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).  "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either

7

(1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).[2]

Probable cause "is a complete defense to an action for false arrest brought under New York law or § 1983." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citation omitted). The probable cause defense to a false arrest claim requires only that there was probable cause for an arrest; it does not require that the officer had probable cause to arrest for each specific offense charged. Marcavage v. City of New York, 689 F.3d 98, 109 (2d Cir. 2012). Accordingly, the defense prevails if there was probable cause to arrest for any single offense. Id. at 109-10. The arresting officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Garcia v. Does, 779 F.3d 84, 93 (2d Cir. 2015) (citation omitted).

The requirement of probable cause does not create a high bar for law enforcement. An officer has probable cause to arrest "when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

---

[2] Anderson's false arrest and false imprisonment allegations are addressed together. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

8

person to be arrested has committed or is committing a crime." Id. at 92 (citation omitted). "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted). An arresting officer may rely on the collective knowledge of the officers involved in an investigation. Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). Given the "practical restraints" on police in the field, officers are given "correspondingly great" latitude when ascertaining an individual's intent for probable cause purposes. Zalaski v. City of Hartford, 723 F.3d 382, 393 (2d Cir. 2013) (citation omitted).

Anderson was charged with criminal sale of a controlled substance in the third degree in violation of NYPL § 220.39(1). A person is guilty of criminal sale of a controlled substance in the third degree when he "knowingly and unlawfully" sells "a narcotic drug." N.Y.P.L. § 220.39(1).

Probable cause supported Anderson's arrest under NYPL § 220.39(1). It is undisputed that officers observed a hand-to-hand transfer of money. After Anderson and P.H. were stopped, two ziplock bags containing cocaine were removed from P.H.'s pockets. Taken together, these facts provided reasonable grounds to believe that Anderson had sold cocaine to P.H..

Because probable cause is a complete defense, Anderson's false arrest and false imprisonment claims are dismissed.

**III. Malicious Prosecution**

To prevail on a claim for malicious prosecution under both § 1983 and New York law, a plaintiff must demonstrate "(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." <u>Mitchell v. City of New York</u>, 841 F.3d 72, 79 (2d Cir. 2016) (citation omitted). "[T]o be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." <u>Swartz v. Insogna</u>, 704 F.3d 105, 112 (2d Cir. 2013).

The existence of probable cause is a complete defense to a malicious prosecution claim. <u>Stansbury v. Wertman</u>, 721 F.3d 84, 94-95 (2d Cir. 2013). The probable cause standard in the malicious prosecution context, however, is "slightly higher" than the probable cause standard in false arrest cases. <u>Id</u>. at 95. Probable cause in the context of a malicious prosecution claim has been described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." <u>Id</u>. (citation omitted). Once probable cause to arrest

10

has been established, claims of malicious prosecution survive only if, between the time of the arrest and the initiation of the prosecution, "the groundless nature of the charges" is made apparent by the discovery of some "intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (New York law). Under New York law, an indictment by a grand jury "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted).

"A § 1983 action, like its state tort analogs, employs the principle of proximate causation." Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999). When evaluating causation under § 1983, courts consider the "foreseeability or the scope of the risk created by the predicate conduct," and must conclude that there was "some direct relation between the injury asserted and the injurious conduct alleged." County of Los Angeles v. Mendez, 137 S.Ct. 1539, 1548-49 (2017). For this reason, each alleged constitutional violation must be "analyzed separately." Id. at 1547.

Probable cause existed to charge Anderson with violating NYPL § 220.39(1) and to continue proceedings against him. Anderson was lawfully arrested after officers observed a hand-

11

to-hand transfer of money from P.H. to Anderson and cocaine was recovered from P.H..  On these facts, there was probable cause to believe that Anderson had sold cocaine to P.H. in violation of NYPL § 220.39(1) and to commence a prosecution against him.

Anderson's malicious prosecution claim rests on his assertion that it was Cagirici and Pinkney -- and not Marter -- who made the observations leading to Anderson's arrest.[3] Anderson alleges that Marter falsely asserted that he had made the observations that led to Anderson's prosecution.  Anderson's allegations concerning Marter's testimony do not eliminate the fact that officers observed a hand-to-hand transfer of money from P.H. to Anderson and subsequently recovered cocaine from P.H..  Nor do they otherwise demonstrate the groundless nature of the charges brought against him.  These allegations against Marter, while serious, do not themselves describe a violation of Anderson's constitutional rights that is directly related to the injury he asserts in his FAC and are therefore insufficient to state a malicious prosecution claim.  Since the existence of probable cause is a complete defense to a claim of malicious prosecution, Anderson's malicious prosecution claim is dismissed.

---

[3]  The FAC states "Defendants Defendant DETECTIVE CARL MCLAUGHLIN commenced the criminal proceeding against the Plaintiff with malice."  Because McLaughlin is not mentioned elsewhere in the FAC or the parties' briefs, the reference to McLaughlin is disregarded.

## IV. Failure to Intervene

Anderson next alleges that Pinkney failed to intervene to prevent Anderson's unlawful stop, search, arrest, and prosecution. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted). As described above, the FAC fails to plausibly allege a violation of Anderson's rights by other officers. Accordingly, Anderson's failure to intervene claim is dismissed.

## V. Conspiracy to Violate Civil Rights

Anderson alleges that Marter, Cagirici, and Pinkney conspired to deprive him of his constitutional rights by agreeing that Marter would take credit for Anderson's arrest.[4] To survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, or "a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

---

[4] Pages 16 and 17 of the FAC asserts that Marter, Cagirici, and Pinkney conspired with each other to deny Anderson his constitutional rights, including the right to be free from excessive force. The FAC does not describe when or how Anderson was subjected to the use of excessive force. This assertion is therefore disregarded.

13

Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (a conspiracy between two or more state actors)). A § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." Singer, 63 F.3d at 119.

Anderson fails to state a § 1983 conspiracy claim because he has failed to allege a violation of his rights. The § 1983 conspiracy claim is dismissed.

**VI.  Municipal Liability**

Municipalities cannot be held liable under § 1983 unless the plaintiff can prove that the unconstitutional action was taken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citation omitted). As a result, to state a claim against a city for the unconstitutional actions of its employees, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). An

"official policy or custom" may be established through the official acts of city lawmakers or "those whose edicts or acts may fairly be said to represent official policy," Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978), or by a pattern of misconduct that is "sufficiently persistent or widespread as to acquire the force of law." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

For the reasons set forth above, Anderson's municipal liability claim is dismissed to the extent that it is premised on his unlawful stop, false arrest, malicious prosecution, failure to intervene, and conspiracy claims. To the extent that Anderson alleges a separate municipal liability claim premised on Marter's allegedly false testimony, Anderson fails to plausibly allege that Marter's actions were taken pursuant to an official policy or custom or to identify any injury he sustained from the alleged violation of his rights by the City. Anderson's municipal liability claim is dismissed.

## CONCLUSION

The defendants' February 14, 2017 motion to dismiss is granted. The Clerk of Court is directed to enter judgment for the defendants.

Dated: New York, New York
       June 23, 2017

_____
DENISE COTE
United States District Judge